*Roy Hobbs and Jordie Meehan*
*9332 Sea Parrot Circle, Anchorage, AK 99515*
*907-887-6559*
*royahobbs@hotmail.com, meehanjordie@gmail.com*
*Plaintiffs, Pro Se*



FEB 17 2026

CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ROY HOBBS and JORDIE MEEHAN, | Case No. 3:26-cv-00071-SLG |
| Plaintiffs on behalf of N.L., a minor child | COMPLAINT: |
| v. | APPEAL OF ADMINISTRATIVE DECISION (20 U.S.C. § 1415(i)(2)) |
| ANCHORAGE SCHOOL DISTRICT | |
| Defendants | |

## FIRST AMENDED VERIFIED COMPLAINT FOR JUDICIAL REVIEW
## OF ADMINISTRATIVE DECISION (IDEA)

I. **JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action pursuant to **28 U.S.C. § 1331** (federal question jurisdiction) and the Individuals with Disabilities Education Act (IDEA), **20 U.S.C. § 1415(i)(2)**.

2. Venue is proper in the District of Alaska pursuant to **28 U.S.C. § 1391(b)** because the events and omissions giving rise to these claims occurred within this judicial district.

3. Pursuant to **20 U.S.C. § 1415(i)(2)(C)**, this Court must receive the records of the administrative proceedings, hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. The Court applies a "modified de novo" review, providing an independent evaluation of the legal errors committed by the Hearing Officer by focusing on its role to conduct an

independent evaluation of legal errors. The Court reviews all conclusions of law **de novo,** as the Hearing Officer's decision to bypass mandatory statutory safeguards constitutes a reversible error of law.

4. This Court further exercises its **equitable jurisdiction** to ensure the protection of the Student's safety and civil rights, as the administrative process below failed to provide the mandatory procedural safeguards required by law, resulting in actual physical injury and a denial of due process. This intervention is necessary **in the interests of justice** to restore the Student's access to a Free Appropriate Public Education (FAPE).

5. **Authority to Amend:** Plaintiffs file this Amended Verified Complaint pursuant to **Federal Rule of Civil Procedure 15(a)(1)**, which permits a party to amend its pleading once as a matter of course. This amendment is filed to clarify the jurisdictional preconditions that were unsatisfied in the administrative proceeding below and to incorporate additional evidence of irreparable harm occurring after the initial filing, and to adjust the format.

## II. INTRODUCTION

Plaintiff Parents bring this civil action pursuant to the Individuals with Disabilities Education Act (IDEA), **20 U.S.C. § 1415(i)(2)**, to appeal the Final Order of the Hearing Officer dated **January 15, 2026.** Plaintiffs seek to vacate the dismissal of their Due Process complaint (DP 26-07) on the grounds that the Hearing Officer committed multiple reversible errors of law, violated mandatory procedural safeguards, and ignored the student's **uncontroverted** medical reality in favor of stale data, resulting in **actual, foreseeable physical injury** (a talus stress fracture) and a total deprivation of educational services (medically homebound with no established educational services).

This action seeks to remedy a **Structural Error** and a manifest injustice. By prioritizing administrative 'efficiency' (Mr. Seaver, Jan. 12 email) over the mandatory safety mandates of the IDEA, the lower proceeding left a medically fragile student without protection, leading to foreseeable physical injury. This appeal seeks to vindicate the student's federal rights and ensure that procedural convenience never again supersedes a child's safety.

2

Case 3:26-cv-00071-SLG   Document 6   Filed 02/17/26   Page 2 of 19

The Court reviews IDEA administrative decisions under a **'modified de novo'** standard. Under this standard, while the Court gives 'due weight' to the administrative record, it reviews all conclusions of law **de novo**—meaning it owes no deference to a Hearing Officer's legal interpretations that contradict plain statutory language, such as the mandatory Resolution period (34 CFR § 300.510) and Stay-Put (AS 14.30.193(e)).

## III. STATEMENT OF FACTS

### A. Misapplication of Alaska Stay-Put Protections

1. The HO's Final Order, dated **January 15, 2026,** dismissed the Parents' claims on the basis that Parents were "declining to cooperate" with a District evaluation.
2. This finding directly violates **AS 14.30.193(e)**, which mandates that a child "may not be evaluated" until the appellate review is exhausted. This error was the **proximate cause** of real-life imminent and irreparable harm—the student's physical injury (bone fracture)—which cannot be reversed by money damages.
3. The physical injury sustained by the student on February 3, 2026, constitutes **irreparable harm** directly resulting from the HO's failure to enforce the mandatory Stay-Put protections of AS 14.30.193(e). This injury serves as 'Additional Evidence' under 20 U.S.C. § 1415(i)(2)(C), proving that the administrative dismissal was not only a legal error but a threat to student safety.
4. This finding did not take Plaintiffs claims as true and accurate as required during the dismissal stage. During the dismissal stage, the HO was only required to determine if there was an IDEA dispute. The HO failed to apply the proper standard for a Motion to Dismiss, which requires the adjudicator to view all facts in the light most favorable to the non-moving party. This is a reversible error.
5. Plaintiffs claims of orthopedic and multiple disabilities under the IDEA were effectively ignored by the state-sponsored HO without a proper explanation why the disabilities were excluded. This is a reversible error.
6. The Final Order applied an incorrect legal standard by penalizing the Plaintiffs for adhering to the 'Stay-Put' status quo. This is a **Manifest Error of Law.**

### B. Procedural History of Referral

3
Case 3:26-cv-00071-SLG    Document 6    Filed 02/17/26    Page 3 of 19

1. The District never issued a PWN for the orthopedic disability. Under **34 CFR § 300.503**, the District's clock doesn't start, and their "cooperation" claims don't stick, until they provide that formal notice
2. On **December 6, 2025,** Plaintiffs filed the Due Process Complaint to the district under AS 14.30.193 stating non-consent and fourteen prior attempts to collaborate with the district regarding a higher level of services.
3. The 15-day window for a Resolution Meeting expired on **December 20, 2025.**
4. The District never scheduled or held the meeting.
5. On **December 19, 2025,** Plaintiffs submitted the due process complaints (2 forms) directly to DEED.
6. On **December 21, 2025,** Plaintiffs submitted additional documents to be included in their due process complaint directly to DEED.
7. Instead of meeting, the District filed a Motion to Dismiss, which the HO granted.
8. On **September 15, 2025,** the District created and implemented a 504 Plan. This plan included "related services" that a 504 Plan was unable to legally fulfill (to this day) where Plaintiffs allege should have been an IDEA service.
9. The District's characterization of the 'visiting teacher' as a Section 504 accommodation was a legal misclassification of **Specially Designed Instruction (SDI)**. Because this service required adapting the content and delivery of teaching to address the student's unique academic and physical needs, the **gravamen** of the Plaintiffs' complaint—under the **Frye 'library' test**—is the denial of a FAPE under the IDEA. The Hearing Officer's failure to identify this service as SDI constitutes a manifest error of law that led to a wrongful dismissal.
10. The provision of a 'visiting teacher' to deliver one-on-one instruction for a student who is three grade levels behind academically—and who suffers from chronic pain and sporadic attendance due to a documented orthopedic condition—is the functional equivalent of SDI. Under **34 C.F.R. § 300.39(b)(3)**, the District was adapting the delivery of instruction to meet the unique needs of the student, regardless of the 'Section 504' label erroneously applied to the service.

11. The District's attempt to 'label' this as a Section 504 accommodation is a legal fiction that the Hearing Officer (HO) erroneously accepted, failing to apply the correct jurisdictional analysis.
12. Under the **Frye 'library test,'** a visiting teacher providing intensive academic remediation for a homebound student is a service unique to the public education system and cannot be characterized as a mere accommodation. Because this service was designed to address a three-year academic deficit and the student's inability to focus due to chronic pain, it constitutes SDI, thereby anchoring this dispute firmly within the jurisdiction of the IDEA.
13. This classification **mandates IDEA jurisdiction**, and the HO's failure to recognize this 'gravamen' constitutes a manifest error of law.
14. On **November 17, 2025,** the district issued a Notice of Proposed Action after Plaintiffs grievance outlined in the original unamended petition stating compensatory services were due from the failed intervention.
15. On **December 5, 2025,** the District removed the "related services" in the previous Section 504 Plan and subsequently on **December 15, 2025,** the District removed the compensatory related services stating that they could not provide the necessary service to the student.
16. On **December 6, 2025,** Plaintiffs submitted a due process request under AS 14.30.193 stating non-consent and fourteen prior attempts to collaborate with the district regarding a higher level of services.
17. The HO did not address the District's **Child Find** duty under **34 CFR § 300.111** to refer the student for an IDEA evaluation to determine if the unmet needs from the Section 504 "related service" could be met through IDEA, therefore failing to determine whether the gravamen of the complaint sought relief for the denial of a Free Appropriate Public Education (FAPE) under the IDEA, regardless of the labels used in the initial pro se filing.
18. On **December 17, 2025,** Plaintiffs submitted a "Motion to Change Hearing Type" in the Section 504 proceeding to change the hearing to a AS 14.30.193 hearing from the District's **December 16, 2025,** Section 504 Hearing which Plaintiffs did not sign, initiate, or request.

19. On **December 19, 2025,** the Office of Administrative Hearings (OAH) responded to Plaintiff inquiry regarding referral processing, stating that after a district receives a referral "the school district then contacts the Department of Education to appoint a Hearing Officer". The district did not refer.
20. In conjunction of Plaintiff communication with OAH, the district appointed Section 504 Hearing Officer, Andrew Lebo, informed parents on **December 18, 2025** that "Rather than require ASD to formally respond to Parents' motion [to change the Section 504 Hearing Type to AS 14.30.193], let's plan to discuss it at the beginning of Monday's teleconference. But parents should be aware that ASD is correct that a special education due process hearing request or complaint under the IDEA and related state law must be initiated by a filling with the Alaska Department of Education and Early Development (DEED). If Parents wish to pursue such a hearing, they should forward their complaint to the DEED." This discretion directly went against AS 14.30.193(b) as outlined in OAH's directive and state law.
21. On **December 19, 2025** Plaintiffs submitted the due process request to DEED.
22. On **December 21, 2025,** Plaintiffs submitted the amended due process request to DEED.
23. On **December 22, 2025,** DEED appointed Mr. Lebo. Parents declined his oversight and DEED made the final referral to Hearing Officer Mr. Timothy Seaver.
24. On **December 24, 2025** through **December 29, 2025,** Plaintiffs attempted to engage in a resolution meeting with the District, and on **December 29, 2025,** Plaintiffs requested DEED and the HO's assistance on facilitating the resolution meeting. These requests went unanswered.
25. On **January 5, 2026,** the District submitted an entry of appearance and a motion to dismiss based off of a lack of jurisdiction.
26. On **January 5, 2026,** Plaintiffs submitted a Motion for Bifurcated Determination Allowing Independent Education Evaluation and a Parental Support of an IEE (Proposed Evaluator: Dr. Lawrence Norton).

27. The above Plaintiff documents served to split the case from eligibility and to notify the HO that the district's refusal to evaluate in September constituted as a denial to evaluate under the IDEA despite formal paperwork.
28. On **January 6, 2026,** Plaintiffs submitted an Emergency Motion to Enforce Statutory Stay-Put, Restore Placement, and Notice of Further Procedural Violations.
29. The above Plaintiff documents served to protect the student's placement while the legal proceeding discussed jurisdiction, placement appropriateness, and child findings/safety.
30. On **January 9, 2026,** Plaintiffs submitted a Notice Regarding Evaluation Sequencing, requesting the HO to verify the correct sequencing from the district's proposed evaluation meetings on **January 15, 2026,** or **January 20, 2026.** This was not responded to.
31. On **January 11, 2026,** Plaintiffs requested discovery, which the HO on **January 11, 2026,** denied.
32. On **January 11, 2026,** the HO scheduled a status conference. On **January 12, 2026,** the HO canceled the status conference.
33. On **January 14, 2026,** and **January 15, 2026,** Plaintiffs supplemented the record with physical safety requirements, X-Ray, MRI, medical mandates, and a claim of District-cleansed documents.
34. On **January 15, 2026,** after 5:00 PM, the HO issued his **Final Order.**
35. The Final Order contains a reversible error of law by failing to address the District's procedural non-compliance with the IDEA's Child Find mandates **(no Prior Written Notice on the orthopedic disability or multiple disabilities under the IDEA—34 C.F.R. § 300.503 and 4 AAC 52.190).**
36. Resolution Meeting **(did not occur),** Referral Refusal **(under AS 14.30.193(b), referral did not occur by the district),** and meaningful parental participation **(34 C.F.R. § 300.503, 34 C.F.R. §§ 300.322 and 300.501, and 4 AAC 52.190),** effectively denying the student access to necessary state-level intervention **(state due process violation).**

7
Case 3:26-cv-00071-SLG   Document 6   Filed 02/17/26   Page 7 of 19

37. The Final Order **does not specifically address the orthopedic condition as an IDEA category**, nor does it acknowledge the disability as a new or separate clinical reality, which Plaintiffs argued the **student was eligible for under AS 14.30.350(2)(G) and AS 14.30.350(2)(K)**. Under **AS 14.30.350** and **4 AAC 52.130(f)**, the HO was required to address. This is a reversible error.
38. The Final Order made a reversible error by **not reviewing the 4 other consolidated documents from Plaintiffs Due Process Referral**. The documents submitted to DEED on December 19, 2025 and December 21, 2025, included a total of six documents as the amended complaint, including: Parental Statement of Non-Consent — Section 504 Hearing; Parent Notice of Due Process and District Improper Hearing Referral; Parental Written Non-Consent (504 Plan); Parental Written Request for Independent Education Evaluation; Parent-Initiated Due Process Referral — Request for DEED action; Petition for Formal Administrative Hearing; and Motion to Change Hearing Type.
39. The HO committed a reversible error of law by failing to rule on the Emergency Motion to Enforce Statutory Stay-Put (filed Jan 6) prior to dismissal. This procedural omission **deprived the student of her mandatory legal protection under AS 14.30.193(e), resulting in her return to an unsafe environment and subsequent physical injury (bone fracture).**
40. Plaintiffs reallege and incorporate by reference paragraphs 1 through 39 of Section B as if fully set forth here.

## C. Violations of Mandatory "Shall" Provisions

1. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.
2. **Violation of Mandatory Referral Duty (AS 14.30.193(b)):** State law mandates that upon receipt of a due process request, the school district **shall** refer the matter to the department. As documented in Section B, Paragraphs 13-14, the District failed to refer the Plaintiffs' December 6, 2025, complaint, instead forcing the Plaintiffs to bypass the District and file directly with DEED. This failure to follow a mandatory 'shall' provision is a reversible error of law and further evidence of the District's procedural obstruction.

8
Case 3:26-cv-00071-SLG    Document 6    Filed 02/17/26    Page 8 of 19

3. The District's failure to initiate a Child Find evaluation upon receipt of a medical document citing "multiple surgeries" and a diagnosed orthopedic disability, alongside MRI/X-Ray evidence in 2025 was not a mere 'clerical error'; it was the **proximate cause** of the physical injury sustained on February 3, 2026. Had the District followed the mandatory 'Shall' provision of child find, safety protocols would have been in place to prevent the student's injury on Oct. 2025 which subsequently caused an infection/skin irritation delaying the initial healing of the surgical incision (as noted in the Plaintiff due process complaint/non-consent to 504 as documented in the audio recording on Dec. 5, 2025) and, more recently, the student's stress fracture and self-harm (Feb. 2026).

4. On **December 6, 2025**, Plaintiffs filed a Due Process Complaint, subsequently amended on December 21, 2025. Pursuant to **34 CFR § 300.510(a)(1)**, the District was mandated to convene a resolution meeting within 15 days of receiving notice of the complaint. No such meeting occurred. This is a reversible error.

5. Federal law requires that the resolution meeting include "relevant member or members of the IEP team who have specific knowledge of the facts identified in the due process complaint." In this matter, the District failed to include members with knowledge of the student's 2025 orthopedic diagnosis and medically fragile status, preventing a meaningful attempt at resolution, rendering the resolution process legally void and a substantive violation. This is a reversible error.

6. The Final Order is **void ab initio** because the District failed to satisfy the jurisdictional precondition of a Resolution Meeting under **34 CFR § 300.510**. The IDEA mandates a 15-day resolution period to encourage settlement before administrative litigation may proceed. By granting a Motion to Dismiss before this mandatory 'shall' provision was satisfied, the Hearing Officer acted outside of his statutory authority and deprived Plaintiffs of a fundamental procedural safeguard.

7. The failure to hold the Resolution Meeting was not a mere 'technicality'; it prevented the parties from discussing the Student's urgent orthopedic needs and

the February stress fracture, which could have been mitigated had the District followed the mandatory settlement procedures required by federal law.

8. Because the District failed to satisfy the jurisdictional precondition of a Resolution Meeting, the HO lacked the legal authority to grant a Motion to Dismiss. The dismissal is **void ab initio** because the administrative process was never properly 'born' under the law.

9. The Hearing Officer erred as a matter of law by dismissing the complaint without addressing the District's non-compliance with these mandatory resolution requirements. By prioritizing administrative "efficiency" (as cited in the HO's January 12 notification) over these statutory safeguards, the HO effectively sanctioned the District's bypass of the mandatory mechanism designed to resolve FAPE disputes without state or federal litigation.

10. The prioritization of "efficiency" is not a recognized legal exception to the mandatory resolution period. This is a reversible error.

11. Contrary to **4 AAC 52.490 and AS 14.30.193(d)**, the HO failed to provide the parties with required information regarding mediation or encourage the use of such voluntary dispute resolution. AS 14.30.193(d) states "the hearing officer **shall** immediately inform the parent and the school district of the availability of the mediation process provided under AS 14.30.194 and encourage use of that process to attempt to resolve the disagreement between the parent and the school district." This is a reversible error.

12. The HO's failure to encourage mediation as mandated by AS 14.30.193(d) was not a harmless error; it deprived the parties of a critical opportunity to agree upon the child's safe placement, the absence of which led directly to the student's subsequent stress fracture on February 3, 2026.

13. On **January 11, 2026,** the HO scheduled a status hearing during the resolution period. On **January 12, 2026,** the HO canceled a status conference. On January 14, 2026, the HO did not address Plaintiffs' claims of record cleansing (fraudulent records submitted as District exhibits). This is a reversible error.

14. The HO's finding on **January 15, 2026,** that Parents were 'declining to cooperate' fails to account for the statutory protection of **AS 14.30.193(e)**, which prohibits

Case 3:26-cv-00071-SLG     Document 6     Filed 02/17/26     Page 10 of 19

10

evaluations during the pendency of an administrative or judicial proceeding. The HO effectively issued a punitive dismissal based on the Plaintiffs adherence to state statutory protections. This is a reversible error.

15. Despite being in possession of the student's X-Ray and MRI, which documented a clear "suspicion" of an orthopedic disability, the District failed to initiate a Child Find evaluation or provide a Prior Written Notice (PWN). The HO's Final Order ignored this contemporaneous medical data in favor of a summary dismissal.

16. Plaintiffs were deprived of an opportunity to be meaningfully heard and to resolve the dispute. This is a reversible error.

### D. Failure to Apply Proper Legal Standard and Reliance on Stale Data

1. The HO erred by failing to accept the Parents' factual allegations as true, as required at the dismissal stage and during the Resolution Period. This error was the **proximate cause** of real life imminent and irreparable harm which cannot be reversed by money damages.

2. The Hearing Officer erred by dismissing claims from 2022–2024 as time-barred without first conducting the mandatory analysis required by **34 CFR § 300.511(f)(2)**.

3. Under federal law, the statute of limitations **shall not apply** if a parent was prevented from filing due to the local educational agency's withholding of information, such as the **Prior Written Notice** required under **34 CFR § 300.503**.

4. IDEA due process proceedings rule under "preponderance of the evidence"—if Plaintiffs can prove that the District did provide at least one PWN, it is likely that they did not provide others. The district did not submit a PWN for the 2025 orthopedic or multiple disabilities PWN from August 15, 2025 through December 6, 2025.

5. By failing to determine whether the District's documented omission of PWNs triggered this statutory exception, the HO's dismissal for lack of jurisdiction constitutes a reversible error of law.

6. The HO relied on stale and incorrect District data from 2022 and 2024 while disregarding the Parents' current 2025 medical documentation of the student's orthopedic disability.

7. The student's orthopedic disability was not considered a potential disability under the IDEA during the resolution period or pending a status hearing or a trial. Therefore, the HO's "gravamen" in *Fry v. Napoleon Community Schools (2017)* could not be legally incorrect.

8. This 2025 request was the latest in a documented pattern of the District's failure to adhere to IDEA procedural safeguards. While the initial request focused on the new orthopedic disability, it did not preclude the District from arranging and providing to Plaintiffs necessary PWNs as required by law. In 2025, the district determined the student was not eligible for the IDEA for her orthopedic disability and did not provide a PWN. In 2022, 2023 and 2024, Parents submitted written requests for special education evaluations. Specifically for 2022, Plaintiffs noted FASD—cognitive discrepancies—in the student's social-economical history. The denial of the cognitive testing encouraged Plaintiffs to pursue a neuropsychological test for the student, to which the student was placed on a waitlist for three years. Knowing this information at the time, the District failed to issue a Prior Written Notice (PWN) as mandated by **34 CFR § 300.503** to Plaintiffs for special education requests, depriving the Parents of their right to a timely administrative challenge and resulting in the 'stale data' the Hearing Officer later used to justify dismissal and justify ignoring a 2025 new orthopedic disability that was not present or known in 2024, 2023, or 2022.

9. Plaintiffs adherence to the IDEA timelines and the HO's generosity of allowing Plaintiff alleged district 2022 and 2024 data prior to an evidentiary hearing precluded the student of a standard due process proceeding. No fair due process proceeding may occur when new disabilities unknown in prior years (2025) are waived of the IDEA protections if a HO pre-determines without a trial that a parent did not challenge a prior evaluation (2022).

10. The District cannot claim a 'lack of cooperation' when they failed to issue a mandatory **Prior Written Notice (PWN)** under 34 CFR § 300.503 regarding the student's orthopedic needs. Without a PWN, there was no 'proposed action' for the Parents to even respond to. The HO's finding of non-cooperation is therefore a **Manifest Error of Fact.**

12

11. The Hearing Officer committed a **Manifest Disregard of the Law** and a **Violation of Due Process** when he stated that litigation 'prevents' efforts to help the child (Final Order, p. 6). This statement reveals a fundamental misunderstanding of 20 U.S.C. § 1415, which establishes that due process proceedings are the legal mechanism for ensuring a child's access to a Free Appropriate Public Education (FAPE). By characterizing the exercise of federal rights as an impediment to the student's welfare, the HO biased the proceedings in favor of 'administrative efficiency' over 'statutory compliance.'
12. The Administrative Record submitted for review is materially incomplete, as it omits safety mandates and expressions of parental non-consent present in the original contemporaneous documents. This discrepancy precluded the Hearing Officer from conducting a full and fair evaluation of the student's IDEA eligibility.
13. The dismissal is **void ab initio** (void from the start) because the District failed to satisfy the jurisdictional precondition of the Resolution Meeting. The HO lacked the authority to grant a Motion to Dismiss while the mandatory 15-day resolution window was being bypassed by the District.

E. **The "Cleansed" and "Incomplete" Record**
   1. The HO did not address the Plaintiffs allegation that the District's exhibits from their Motion to Dismiss (Jan. 5, 2026) contained a cleansed or incorrect documents.
   2. Specifically, Exhibit B was a document that Plaintiffs never received, signed, nor consented to. The document "wiped out" two pre-checked boxes from the "draft" document that Plaintiffs received on December 5, 2025—the confirmation that the child was a disabled student and that the 504 Team agrees to implement the 504 Plan (entire boxes erased). Additionally, whole sections were erased. The submission of the Jan. 5, 2026 after the district finalized the document on Dec. 12, 2025—which Plaintiffs alleged in their complaint the very record excluded parental non-consent and discrepancies as noted in their audio recording of the meeting—was not ruled on by the HO. The HO's failure to settle the administrative record prior to dismissal is a **reversible error**

3. The HO's failure to address the Plaintiffs' timely objection to the authenticity of the District's exhibits constitutes a **manifest disregard for evidence** and a violation of due process.

### F. Material Changes in a new State Due Process

1. On **January 29, 2026,** the student's medical provider submitted a "Other Health Impairment" indicating eligibility under M85.50 and Z98.890 and stated it was medically necessary for the District to provide physical therapy for the student's orthopedic condition. (Exhibit C)
2. The District did not ask for this form or determine eligibility prior to **January 27, 2026,** for the student's orthopedic condition. Without a PWN, it is unknown how the district determined the exclusion of an orthopedic disability under the IDEA.
3. **On February 2, 2026,** the student engaged in a neutral third party neuropsychological test conducted by Dr. Lawrence Norton, who was an ASD psychologist for for special education for 20 years. He determined the student was eligible for special education services under:
    a. **F90.0 ATTENTION DEFICIT HYPERACTIVITY DISORDER, PREDOMINATELY INATTENTIVE PRESENTATION**
    b. **R41.83 BORDERLINE INTELLECTUAL FUNCTIONING**
    c. **F41.1 GENERALIZED ANXIETY DISORDER**
    d. **R45.86 EMOTIONAL LABILITY**
    e. **R41.844 EXECUTIVE FUNCTION DEFICIT**
    f. **F81.0 SPECIFIC LEARNING DISORDER, WITH IMPAIRMENT IN READING (COMPREHENSION)**
    g. **SPECIFIC LEARNING DISORDER, WITH IMPAIRMENT IN MATHEMATICS**
    h. **F81.81 SPECIFIC LEARNING DISORDER, WITH IMPAIRMENT IN WRITTEN EXPRESSION**

*Visual Aid: Dr. Norton's Neuropsychological Assessment, page 10 (Exhibit B)*

**DIAGNOSTIC IMPRESSIONS**

**ICD-10**

| Code | Description |
|---|---|
| F90.0 | Attention Deficit Hyperactivity Disorder, Predominately Inattentive Presentation |
| R41.83 | Borderline Intellectual Functioning |
| F41.1 | Generalized Anxiety Disorder |
| R45.86 | Emotional Lability |
| R41.844 | Executive Function Deficit |
| F81.0 | Specific Learning Disorder, with impairment in reading (comprehension) |
| F81.2 | Specific Learning Disorder, with impairment in mathematics |
| F81.81 | Specific Learning Disorder, with impairment in written expression |
| G47.0 | Insomnia Disorder |

**IDEA (Special Education) Eligibility**

Potential Eligibility: Specific Learning Disability, Other Health Impaired

4. On **February 3, 2026,** the student suffered a material change in the student's physical and medical status (stress fracture, Exhibit A).
5. On **February 5, 2026,** the student's medical provider submitted a medical mandate for a safety plan due to recent self-harm, emotional disturbance, and medical fragility. This continues to remain unimplemented by the district. (Exhibit G)
6. On **February 6, 2026,** the Plaintiffs submitted a new state due process request directly to DEED for these material changes.
7. On **February 10, 2026**, DEED declined the Plaintiffs expedited new due process which included constructive exclusion from the educational setting. This was based off of the state's interpretation of disciplinary change of placement or manifestation determination, pre-determining Plaintiff's allegation of constructive exclusion of the school environment that caused total loss of educational access without a formal 'expulsion'. (Exhibit K)
8. On **February 11, 2026,** DEED assigned Mr. Seaver as the new HO for the new due process request. Parents declined pursuant to AS 14.30.193(c).
9. On **February 12, 2026,** DEED assigned Mr. Lebo as the new HO for the new due process request.

15

Case 3:26-cv-00071-SLG   Document 6   Filed 02/17/26   Page 15 of 19

10. On **February 13, 2026,** the student's medical provider ordered the District to provide homebound services due to the school building and environment being inaccessible to the student from lack of adherence to medical mandates. (Exhibit J).
11. On **February 14, 2026,** the district maintained that the student was unexcused from school.
12. **These material changes were submitted as a foundational knowledge regarding the new state due process complaint dated February 6, 2026.**

## IV. NOTICE OF CONCURRENT FILINGS

1. Concurrent with this Complaint, Plaintiffs are filing an **Preliminary Injunction** for the Stay-Put provisions.
2. Plaintiffs also submit a motion to seal exhibits.

## V. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Court:

1. **Vacatur:** Vacate the Hearing Officer's Final Order dated **January 15, 2026.** Declare the Final Order void ab initio due to the District's failure to satisfy jurisdictional preconditions and the legal errors herin.
2. **Declaratory Judgment on Stay-Put:** Enter a declaratory judgment that the Student is entitled to 'Stay-Put' protections under **AS 14.30.193(e)** and **34 CFR § 300.518,** enforcing the legally correct standard of 'stay put'.
3. **Additional Evidence:** Pursuant to **20 U.S.C. § 1415(i)(2)(C)** and the Court's **inherent equitable power** to prevent irreparable harm to a minor, Plaintiffs request the Court admit additional evidence including the February 2026 medical records and video documentation. This evidence demonstrates that the administrative dismissal was not merely a procedural error, but a **proximate cause of physical injury,** for which no adequate remedy at law exists.
4. **Remand:** Remand the matter for a full evidentiary hearing on the merits regarding the student's eligibility for an IEP for her orthopedic disability and multiple disabilities. Order that the scope of any remanded or new

administrative proceedings include an accounting of all educational and related services denied to the Student from the date of the initial 2025 injury through the date of a valid IEP implementation, for the purpose of awarding appropriate compensatory relief.

5. **Enforcement of the Resolution Meeting:** Compel the District to conduct a Resolution Meeting in strict compliance with 34 CFR § 300.510, including the participation of relevant IEP team members with knowledge of the student's 2025 orthopedic diagnosis

6. **Orthopedic Disability Recognition:** Compel the District and the State to recognize the student's orthopedic disability or suspected disability under the IDEA and under state law AS 14.30.350(2)(G).

7. **Enforcement of Procedural Safeguards:** Enjoin the District from further violations of the Student's rights and order strict compliance with **34 CFR § 300.503** (Prior Written Notice) for all evaluation requests.

8. **Tolling of Statute of Limitations and Order for Compensatory Relief:** Order that the one-year statute of limitations under AS 14.30.193(a) is **tolled** pursuant to the federal exception in **34 CFR § 300.511(f)(2)**. Plaintiffs specifically allege that the District withheld mandatory information—specifically **Prior Written Notices (PWNs)** for the 2022, 2023, and 2024 special education evaluation requests, and the 2025 orthopedic eligibility determination. Because this withholding of information prevented Plaintiffs from timely exercising their due process rights, the Court should order that all claims dating back to the initial 2022 request are eligible for compensatory relief and may be heard in a full evidentiary hearing before a state Hearing Officer.

9. **Integrity of Record:** Order the District to produce the full, unredacted, and un-cleansed administrative record for this appeal.

10.     **State Intervention:** Order the State to allow the material changes in **DP 26-08** to proceed uninterrupted, separating the past proceedings **DP 26-07** (federal intervention) from current and future **DP 26-08** (state

intervention). Order the state to follow all IDEA and State law regarding special education.

**11.     Court fees:** Order the District or state to reimburse for all court fees related to this appeal.

**12.     Additional Relief:** Grant such other and further relief as the Court deems just and proper.

## VI. CONCLUSION

The Hearing Officer's prioritization of "efficiency" (as quoted in his email notification) over the mandatory procedural and safety protections of the IDEA has left a medically fragile student without a safe or appropriate educational plan. For the reasons stated above, Plaintiffs respectfully request that this Court grant the relief requested herein and ensure the student's rights are protected under the law.

**RESERVATION OF RIGHTS**

Plaintiffs explicitly **reserve the right** to pursue independent claims for physical injury, negligence, and damages under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (ADA) in subsequent proceedings. Nothing in the current state proceeding shall be construed as a waiver of the Student's right to seek redress for the physical injuries sustained on October 31, 2025 and February 3, 2026. Plaintiffs reserve all rights to engage in due process proceedings of material changes and do not waive future due process proceedings.

**DATED** this 17 day of February, 2026, at Anchorage, Alaska, and signed under penalty of perjury that the foregoing is true and correct:

_____
*Roy Hobbs, Plaintiff Pro Se,*
*on behalf of N.I.*

_____
*Jordie Meehan, Plaintiff Pro Se,*
*on behalf of N.I.*